IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF BERKELEY, MAYOR, AND MEMBERS OF THE CITY COUNCIL OF THE CITY OF BERKELEY,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE, PATRICK R. DONAHOE, TOM A. SAMRA, AND DIANA ALVARADO,<br><br>Defendants. | No. C 14-04916 WHA<br>No. C 14-05179 WHA<br><br><br>**ORDER DISMISSING CASE AS MOOT** |
| NATIONAL TRUST FOR HISTORIC PRESERVATION IN THE UNITED STATES<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE; ESTATE, SERVICE PACIFIC REGION,<br><br>Defendants. | |

## INTRODUCTION

In these related NEPA and NHPA actions seeking injunctive and declaratory relief, defendants move to dismiss under Rule 12(b). For the reasons stated below, defendants' motions are **GRANTED**.

## STATEMENT

This litigation relates to the potential sale of the Berkeley Main Post Office, located at 2000 Allston Way, Berkeley, CA, 94704. Plaintiffs are the City of Berkeley (along with its mayor and members of the city counsel) and the National Trust for Historic Preservation, a

nonprofit organization.  Defendants are the United States Postal Service and several of its employees.

In the spring of 2012, the USPS issued an advisory to its postal patrons that it intended to sell the Berkeley Main Post Office building.  Over the next two years, the USPS took various steps to sell the building, such as issuing a notice of its intent to relocate, officially listing the building for sale, and actively pursuing bids for the property.  USPS's broker actively marketed the property, listed it for sale, and distributed various marketing materials.  The USPS also took preliminary steps to comply with the National Environmental Policy Act and the National Historic Preservation Act (City of Berkeley First Amd. Compl. ¶¶ 1, 13).

In the fall of 2014, the USPS posted on its website that it was "in contract" with respect to the Berkeley Main Post Office.  Upon learning of the potential sale, plaintiff City of Berkeley filed a motion for a TRO and a preliminary injunction to enjoin the pending sale.  The undersigned judge granted the TRO (Dkt. No. 8).  Two weeks later, plaintiff National Trust for Historic Preservation filed its own lawsuit against the USPS attempting to block the pending sale, and the cases were related.  Both original complaints sought declaratory and injunctive relief blocking the pending sale and alleged that the USPS violated NEPA by declaring a categorical exclusion in secret, and in an arbitrary and capricious manner.  Plaintiffs further alleged that defendants violated the NHPA in an arbitrary and capricious manner by failing to complete Section 106 review prior to entering into a contract for sale and by relying on an inadequate covenant.  Plaintiffs argued that by entering into the sales agreement, the USPS had completed a final and reviewable agency action (City of Berkeley First Amd. Compl. ¶¶ 1, 39).

Before plaintiffs' motion for a preliminary injunction could be ruled on, the potential buyer, Hudson McDonald, LLC, backed out of the deal.  The proposed deal included a five-year leaseback provision, such that the USPS would maintain its retail services in the current post office building while it searched for a relocation site.  As a consequence, no pending sale exists and the property is not currently even listed for sale.  The USPS stated that it has not decided when, if ever, to re-list the Berkeley Main Post Office for sale (Lowe Decl. ¶ 4).

Nevertheless, plaintiffs allege that the cancellation of the pending sale does not render their case moot and have amended their complaints. Plaintiffs' amended complaints seek declaratory and injunctive relief that would prevent the USPS from moving forward with any potential post office sale and/or relocation until it has rescinded the following three actions: (1) the "Final Determination Regarding Relocation of Retail Services in Berkeley, California," which the USPS issued in 2013 and stated that the USPS "has not yet identified the potential relocation site and thus it is premature to evaluate potential impacts" (USPS Exh. 1 at 6); (2) the USPS's Record of Environmental Consideration, which determined that a sale of the post office building was categorically excluded from NEPA review; and (3) a letter to the Advisory Council on Historic Preservation from the USPS stating that it had concluded the Section 106 process (City of Berkeley First Amd. Compl. ¶¶ 1, 57).

Now, defendants move to dismiss under Rules 12(b)(1) and 12(b)(6). Defendants argue that because Hudson McDonald terminated the pending sales agreement, plaintiffs' case is moot. Additionally, defendants contend that plaintiffs lack standing to bring a private right of action under the Administrative Procedures Act.

At oral argument, the undersigned judge requested that the USPS inform the Court as to whether it would rescind the document titled "Final Determination Regarding Relocation of Retail Services in Berkeley, California." In response, the USPS stated (Dkt. No. 54) (emphasis added):

> The answer is yes. The 2013 Final Determination was superseded — now having no further force an [sic] effect — by the September 2014 decision to maintain services in the Berkeley Main Post Office. *Should the Postal Service at some future time decide again that it would be in the best interest of its operations to relocate retail services, the Postal Service will reinitiate the process pursuant to 39 C.F.R. 241.4.*

This order follows full briefing and oral argument.

## ANALYSIS

Under Rule 12(b)(1), the "basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." *Feldman v. Bomar*, 518 F.3d 637, 642 (9th Cir. 2008) (quoting *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir.

3

1988)). Moreover, in reviewing agency decisions, "federal courts lack power to make a decision unless the plaintiff has suffered an injury in fact, traceable to the challenged action, and likely to be redressed by a favorable decision." *Snake River Farmers' Ass'n v. Dep't of Labor*, 9 F.3d 792, 795 (9th Cir. 1993).

When a plaintiff seeks declaratory relief, as here, the "test for mootness . . . is 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1174–75 (9th Cir. 2002) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

This order holds that the case is moot because (1) Hudson McDonald terminated the sales agreement and (2) the USPS has rescinded the 2013 final determination, such that if the USPS later decides to relocate, it will go through the process all over again under 39 C.F.R. 241.4.

Moreover, in late 2014, the City of Berkeley passed new zoning restrictions on the district in which the Berkeley Main Post Office resides. The zoning overlay goes so far as to permit only the following new uses in the Civic Center District: libraries; judicial courts; museums; parks and playgrounds; public safety and emergency services; government agencies and institutions; public schools/educational facilities; non-profit cultural, arts, environmental, community service and historic organizations; live performance theatre; and a public market (Berkeley City Ordinance No. 7,370-N.S., Chapter 23E.98). This will substantially shrink the possible universe of purchasers or alternative users for the building, making it ever more unlikely that the controversy will ever rise from the dead.

Our court of appeals has definitively held that: "A case or controversy exists justifying declaratory relief only when 'the challenged government activity . . . is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties.'" *Headwaters, Inc. v. Bureau of Land Mgmt., Medford Dist.*, 893 F.2d 1012, 1015 (9th Cir. 1990) (quoting *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 122 (1974)).

4

The three agency actions that plaintiffs still challenge, now that the pending sale has evaporated and the relocation decision has been rescined, are intermediate steps that do not bind the USPS to anything. Any injury plaintiffs could conceivably suffer in the future turns on several unknown contingencies, such as: (a) an actual decision to re-list the property; (b) the existence of a contract binding the USPS to a sale and/or a contract binding the USPS to relocation; and (c) that the terms of that future sale and/or relocation, and the actions taken by the USPS leading up to them, actually violate NEPA and the NHPA. These hypothetical events are "too uncertain, and too contingent upon the [defendant's] discretion, to permit declaratory adjudication predicated on prejudice to [plaintiff's] existing interests." *Headwaters*, 893 F.2d at 1015–16.

In *Nome Eskimo Community. v. Babbitt*, 67 F.3d 813 (9th Cir. 1995), our court of appeals reviewed similar facts to those in our case. In *Nome*, the United States Department of the Interior announced that it planned to accept bids for the right to lease areas of the Norton Sound in Alaska for gold dredging. The plaintiffs then sued for an injunction enjoining the leases and for a declaratory judgment establishing plaintiffs' rights to the land at issue. Before the district court could rule on the injunction, the government announced that it had received no bids for the property, that no lease was pending, and that the property was no longer listed for lease. Our court of appeals affirmed the district court's dismissal of the case as moot. In doing so, our court of appeals stated: "Plaintiffs have suggested that, even absent a continuing case or controversy, we should provide a declaration of their rights in the Norton Sound area. However, a declaratory judgment may not be used to secure judicial determination of moot questions." *Id*. at 816.

Plaintiffs argue that their case is not moot, despite the fact that the original buyer backed out, the property is not currently listed for sale, and the USPS rescinded the final determination regarding relocation. Instead, plaintiffs argue that harm is imminent and that a present controversy exists for which effective relief can be granted. Plaintiffs contend that the following three actions, undertaken by defendants, created a cognizable injury: (1) the "Final Determination Regarding Relocation of Retail Services in Berkeley, California," which the USPS issued in 2013 and stated that the USPS "has not yet identified the potential relocation site and

5

thus it is premature to evaluate potential impacts" (USPS Exh. 1 at 6); (2) the USPS's Record of Environmental Consideration, which determined that a sale of the post office building was categorically excluded from NEPA review; and (3) a letter sent to the Advisory Council on Historic Preservation by the USPS stating that it had concluded the Section 106 process. In doing so, plaintiffs rely on the long-held exception to the mootness doctrine, that cases which present issues that are "capable of repetition, yet evading review" are not moot. *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911).

The central decision plaintiffs rely on is *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115 (1974). In *Super Tire*, a group of New Jersey employers challenged a state statute requiring employers to pay benefits to striking workers, arguing that the statute interfered with the policy of free collective bargaining expressed in the Labor Management Relations Act. Before the case could be tried, the parties settled the labor dispute and the strike ended. Despite this, the Supreme Court held that the case was not moot and that declaratory relief could be granted. The Supreme Court reasoned (*id*. at 123–24) (emphasis added):

> [T]he challenged governmental action has not ceased. The New Jersey governmental action does not rest on the distant contingencies of another strike and the discretionary act of an official. Rather, New Jersey has declared positively that able-bodied striking workers who are engaged, individually and collectively in an economic dispute with their employer are eligible for economic benefits. *This policy is fixed and definite. It is not contingent upon executive discretion. Employees know that if they go out on strike, public funds are available.* The petitioners' claim is that this eligibility affects the collective-bargaining relationship, both in the context of a live labor dispute when a collective-bargaining agreement is in process of formulation, and in the ongoing collective relationship, so that the economic balance between labor and management, carefully formulated and preserved by Congress in the federal labor statutes, is altered by the State's beneficent policy toward strikers. It cannot be doubted that the availability of state welfare assistance for striking workers in New Jersey pervades every work stoppage, affects every existing collective-bargaining agreement, and is a factor lurking in the background of every incipient labor contract. The question, of course, is whether Congress, explicitly or implicitly, has ruled out such assistance in its calculus of laws regulating labor-management disputes. In this sense petitioners allege a colorable claim of injury from an extant and fixed policy directive of the State of New Jersey. That claim deserves a hearing.

Our facts are distinguishable from those in *Super Tire* in several respects. Primarily, *Super Tire* found the policy at issue was fixed and definite, did not rest on future contingencies, and had an impact on the economic balance between labor and management. In our case, on the other hand, any potential injury to plaintiffs *does* rest on indefinite future contingencies. For plaintiffs to be injured, the USPS must re-list the property for sale, actually enter into a sale agreement with a buyer, and must go through the procedure laid out in 39 C.F.R. 241.4 all over again. Moreover, as stated above, *Super Tire* stressed that the challenged policy created a cognizable injury because its very presence affected the ongoing labor relationship between the parties. In our case, there is no analogous relationship or injury that would keep the case alive.

Lastly, *Super Tire* concluded that because "the great majority of economic strikes do not last long enough for complete judicial review of the controversies they engender" they fall into the "capable of repetition, yet evading review" exception. *Id*. at 125–26 (quoting *Southern Pac.*, 219 U.S. at 515). Our case does not fall into this exception. The facts that prompted plaintiffs' original suit — an actual pending sale — are capable of repetition. They would not, however, evade review. This exception is typically applied to actions that have a short duration. In *Super Tire*, the exception applied to a labor strike. In the environmental context, this exception typically applies to short-term policies or leases. *See, e.g., Alaska Cent. for the Env't v. U.S. Forest Serv.*, 189 F.3d 851, 854–55 (9th Cir. 1999).

In our situation, however, if the USPS enters into a sale agreement for the property, and if plaintiffs contend that future agreement violates NEPA and the NHPA, then that case would not evade review. In two recent cases that had similar facts to ours, in which the federal government attempted to sell a building and a group of plaintiffs sued under NEPA and the NHPA, courts granted preliminary injunctions and were able to review the cases on the merits. *See Nat'l Post Office Collaborate v. Donahoe*, No. 13–1406, 2014 WL 6686691 (D. Conn. Nov. 26, 2014) (Judge Janet Arterton); *Comm. for the Pres. of the Seattle Fed. Reserve Bank Bldg. v. Fed. Reserve Bank of San Francisco*, No. 08–1700, 2010 WL 1138407 (W.D. Wash. Mar. 19, 2010) (Judge Robert Lasnik). Similarly, in our case, when there was an actual pending sale, plaintiffs' request for a TRO was granted and the case would have been reviewed on the merits, had the

7

pending sale not fallen through. Thus, our situation does not fall into the "capable of repetition, yet evading review" exception to the mootness doctrine.

Plaintiffs next argue that courts rarely dismiss NEPA and NHPA challenges based on mootness grounds. Each of the decisions plaintiffs rely upon, however, is distinguishable from our facts. In *Tyler v. Cisneros*, 136 F.3d 603 (9th Cir. 1998), our court of appeals held that the plaintiffs' NEPA and NHPA claims were not moot. In *Tyler*, however, the Department of Housing and Urban Development had already agreed to the parameters of the housing project at issue with a local developer and had already disbursed the funds for the project. The challenged project did not depend on hypotheticals or contingencies. Our court of appeals concluded that plaintiffs' claims were not moot despite the fact that HUD had already distributed the funds for the specified project. Thus, the plaintiffs had suffered a cognizable injury.

In four other decisions plaintiffs rely on, substantial portions of the projects at issue had already been completed when the plaintiffs filed suit. Those decisions all held that although the challenged projects had largely been constructed, plaintiffs could still assert their NEPA and NHPA claims. *See Columbia Basin Land Protection Ass'n v. Schlesinger*, 643 F. 2d 585 (9th Cir. 1981); *West v. Sec'y of Transp.*, 206 F.3d 920 (9th Cir. 2000); *Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147 (9th Cir. 2006); *Vieux Carre Prop. Owners, Residents & Assocs., Inc. v. Brown*, 948 F.2d 1436 (5th Cir. 1991). In our case, however, substantial portions of the challenged project have not been completed. In fact, no real and definite challenged project exists; it is merely hypothetical. No specific architectural plans have been drawn up, no money has changed hands, and the USPS is not contractually bound to do anything. Frankly, in light of the new zoning ordinance, it seems highly unlikely that this controversy will ever recur in the foreseeable future.

Lastly, plaintiffs argue that their case is not moot, and is ripe for review, based on the Supreme Court's statement in *Ohio Forestry Association, Inc. v. Sierra Club*, 523 U.S. 726, 737 (1998). There, the Supreme Court stated that "a person with standing who is injured by a failure to comply with the NEPA procedure may complain of that failure at the time the failure takes place, for the claim can never get riper." Plaintiffs rely on two decisions interpreting *Ohio*

8

*Forestry* to allow challenges to projects under the NHPA and NEPA. *See Dugong v. Gates*, 543 F. Supp. 2d 1082, 1097 (N.D. Cal. 2008) (Judge Marilyn Hall Patel); *Kern v. BLM*, 284 F.3d 1062, 1070–71 (9th Cir. 2002).

These decisions are distinguishable as well. In *Dugong*, the Department of Defense had already approved specific plans for the construction of a military air station in Japan. Thus, the decision reasoned, plaintiffs' NHPA claim was ripe for adjudication. *Dugong* stressed that the claim was ripe because "the 2006 Roadmap is not an abstract proposal. It sets forth detailed specifications regarding the location and configuration of the replacement military facility. Two runways aligned in a V-shape will be built largely on landfill adjacent to the existing Camp Schwab, but will also extend more than a mile into the waters of Oura and Henoka Bays." *Dugong*, 543 F. Supp. 2d at 1097. Similarly, in *Kern*, the plaintiffs challenged a specific environmental impact statement regarding proposed timber sales in the Coos Bay District of Oregon, arguing that it did not adequately take into account the potential effects on a pathogenic root fungus that grew on the trees. Relying on that environmental impact statement, defendants entered into eight specific timber sales and had concrete plans in place to allow logging to go forward. Thus, *Kern* found that there existed "an imminence of harm to the plaintiffs and a completeness of action by the agency." *Kern*, 284 F.3d at 1070.

## CONCLUSION

For the reasons stated above, defendants' motions to dismiss are **GRANTED**, subject to the following condition. Defendants must provide plaintiffs with written notice at least 42 calendar days in advance of the closing of any future sale of the Berkeley Main Post Office or any final determination to relocate retail post office services.

**IT IS SO ORDERED.**

Dated: April 14, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9